(104 P.3d 405)
No. 91,929

ALLIANCE MORTGAGE COMPANY, *Plaintiff/Appellee,* v. GARY P. PASTINE, TIMMY DALE LEIGHTY, JR., HANNELORE LEIGHTY, JOHN & MARY DOE, *Defendants,* BENEFICIAL MORTGAGE CO. OF KANSAS, INC., *Defendant/Appellee,* THE CORPORATION COMPANY, INC., and STATE OF KANSAS DEPARTMENT OF REVENUE, *Defendants,* and EVERETT W. COX, JR. and TANYA E. COX, *Appellants.*

Opinion filed January 14, 2005.

*Mark Edwards*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellants.

*Mark Mellor*, of Mellor & Miller, P.A., of Wichita, for appellee Beneficial Mortgage Co. of Kansas, Inc.

*Linda S. Mock*, of Shapiro and Reid, of Overland Park, for appellee Alliance Mortgage Company.

Before JOHNSON, P.J., PIERRON and GREEN, JJ.

GREEN, J.: In this mortgage foreclosure case, Everett W. Cox, Jr., and Tanya E. Cox were the high bidders in a sheriff's sale. The trial court determined that the sheriff's sale was conducted according to law in all respects. Nevertheless, the trial court extended the statutory period of time for Beneficial Mortgage of Kansas,

Inc., (Beneficial) a junior mortgagee, to redeem. The Coxes contend that the trial court improperly extended the period of redemption. We agree. Moreover, the Coxes maintain that the trial court should have confirmed the sheriff's sale. Kansas law provides that a sheriff's sale shall be deemed adequate in purchase price if the sale is for the full amount of the judgment, taxes, interest, and costs. K.S.A. 60-2415(b). Does Kansas law allow a trial court to refuse confirmation of a sheriff's sale that is for an adequate purchase price for reasons not supported by law and for reasons not in conformity with equity? Because the answer is no, we reverse and remand to the trial court with directions to confirm the sale where the Coxes were the high bidders, if the Coxes pay the clerk of the trial court the original foreclosure sales price of $85,001 within 30 days of this court's mandate.

Alliance Mortgage Company sued to foreclose its first mortgage on real property located at 618 Wheatland Drive in Junction City, Kansas. Alliance also requested a money judgment against Hannelore Leighty, who had assumed and agreed to pay the debt owed to Alliance.

Beneficial, the second mortgagee, was named as a party defendant and was properly served with a summons. Beneficial answered claiming an interest in the subject property. Beneficial asked the trial court to determine that it held a valid mortgage on the property, to determine the priority of the claims on the property, and to grant "such other and further relief as the Court deems just and equitable." Beneficial did not cross-petition against the defendant owner to foreclose its mortgage. Moreover, it failed to seek relief on its note and to set out the amount that was due under the note.

In its October 2001 journal entry, the trial court determined that Alliance held a first and prior lien upon the property and ordered that its mortgage be foreclosed. The trial court entered judgment in favor of Alliance and against Leighty for $31,375.17, plus interest and listed expenses. In addition, the trial court determined that Beneficial held a valid lien on the property which was second to that of Alliance.

Within the journal entry, the trial court directed the clerk to issue an order of sale to the Geary County Sheriff if the judgment

was not paid in 10 days. The trial court further stated that the defendants would be barred from claiming any interest or lien in or to the property "subject only to the right of redemption from the Sheriff's Sale within three months from the date thereof."

The sheriff's sale on the property was scheduled for July 31, 2003. Notice of the July 2003 sale was published for three consecutive weeks on July 7, July 14, and July 21, 2003, in the Junction City Daily Union. On the day of the sale, 166 bids were received on the subject property. The Coxes were the successful bidders and paid $85,001 to the sheriff's office on the day of the sale. The sheriff's return indicates that $43,290.73 of this amount went towards Alliance's judgment, interest, insurance, and other expenses, resulting in excess proceeds of $41,710.27.

Beneficial maintained that it did not learn about the sale until after it had occurred on July 31, 2003. That same day, Beneficial moved to set aside the sale or, in the alternative, to allow a substituted bid. Beneficial maintained that Alliance had failed to notify it of the July 2003 sheriff's sale and that had it been notified, it would have bid $117,500 on the property. Beneficial attached to its motion a letter addressed to attorney David Troup. The letter directed Troup to bid $117,500 at an earlier sale, which had been cancelled due to Leighty filing bankruptcy.

Responding to Beneficial's motion, the Coxes argued that the motion should be denied. The Coxes set the matter for hearing on September 15, 2003. Subsequently, the Coxes continued the hearing to November 7, 2003. There is no indication in the record that Beneficial objected to this continuance.

After the November hearing, the trial court issued a memorandum opinion in December 2003 denying Beneficial's motion to set aside the sale or to allow a substituted bid. Noting that K.S.A. 60-2410 required notice of the sale only by publication and that due process required that a defendant be given notice of the suit and given the right to defend, the trial court found that Beneficial had been notified of the foreclosure action, that it had filed an answer to the foreclosure action, and that it had adjudicated its lien.

The trial court further determined that Beneficial's interest in the property could have been secured by a money judgment but

this was never pursued. In addition, the trial court stated that the property had clearly been "sold for fair market value in a legitimate transaction. Purchasers have no fault in this matter and Beneficial has not demonstrated why it should be given equity."

Moreover, the trial court specifically found that "the Sheriff's sale was conducted according to law in all respects." Noting that Beneficial had the redemption period allowed to any creditor under K.S.A. 60-2414(b), the trial court stated that Beneficial could exercise its redemption rights any time within the redemption period.

Beneficial moved for a rehearing of its motion to set aside the sheriff's sale or to allow a substituted bid. After conducting a hearing on Beneficial's motion, the trial court issued a second memorandum opinion during January 2004. The trial court reiterated most of its December 2003 findings but found that Beneficial, by not receiving notice of the sheriff's sale, had been denied the right to bid at the sale and thus had been denied a protected property right. Because the trial court determined that Beneficial's due process rights had been violated and because " 'equity abhors a forfeiture' [citations omitted]" it granted Beneficial 10 days to redeem the property. The Coxes appeal from this decision.

On January 22, 2004, Beneficial paid to the Geary County trial court clerk the sum of $117,500 to redeem the subject property. Beneficial moved for an order confirming redemption. Responding to Beneficial's motion, the Coxes asserted that the trial court should reverse its January 2004 decision.

The trial court confirmed the redemption in April 2004 and ordered that $88,686.50 be disbursed to the Coxes; this amount represented the Coxes' bid amount, loan costs and interest, insurance costs, and other expenses paid by the Coxes.

*Standard of Review*

The trial court's memorandum decision in this case contains factual findings and legal conclusions. The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of

law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). An appellate court's review of conclusions of law is unlimited. *Nicholas v. Nicholas*, 277 Kan. 171, 177, 83 P.3d 214 (2004).

Moreover, in reviewing the trial court's decision, we must interpret various statutory provisions pertaining to mortgage foreclosure actions. Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

## Confirmation of Sale

On appeal, the Coxes argue that the trial court erred in extending the statutory redemption period for Beneficial. In making this argument, the Coxes contend that the foreclosure sale on the subject property should have been confirmed.

K.S.A. 60-2415(a) states that the trial court shall confirm the foreclosure sale "[i]f the court finds the proceedings regular and in conformity with law and equity." Here, in both its December 17, 2003, memorandum opinion and its January 26, 2004, memorandum opinion, the trial court held "that the Sheriff's sale was conducted according to law in all respects."

Moreover, under K.S.A. 60-2415(b), "[a] sale for the full amount of the judgment, taxes, interest and costs shall be deemed adequate." In finding that the July 2003 sale was conducted lawfully, the trial court stated:

"According to K.S.A. 60-2415(b), any sale in which the full amount of the judgment, taxes, interest, and costs is received shall be deemed to be adequate. Beneficial elected not to reduce its lien to judgment, had it done so it would have been protected by the provisions of K.S.A. 60-2415(b). Beneficial, at the time of the motion to confirm did not present any evidence as to the value of the property to enable the Court to establish an upset price. The Court specifically holds that the Sheriff's sale was conducted according to law in all respects."

Here, the Coxes paid $85,001 for the subject property on July 31, 2003, the day of the foreclosure sale. The only money judgment

that was entered in the foreclosure action was for Alliance's mortgage on the property. The return filed by the Geary County Sheriff after the July 2003 foreclosure sale indicated that after applying the proceeds from the sale to Alliance's judgment, interest, insurance, and other expenses, an excess amount of $41,710.27 had been received.

The Coxes point out that Beneficial elected not to reduce its lien to a judgment and, therefore, forfeited the protections of K.S.A. 60-2415(b). In finding that Beneficial chose not to reduce its lien to a judgment, the trial court stated:

"Had Beneficial presented evidence as to the amount of their lien either before or after the sale and reduced their lien to a judgment, they would have been protected. For some reason they chose not to do so. Neither in the answer of Beneficial or the motion to set aside the sale, have they presented evidence of the amount of their lien. The only indication of the amount is stated in the Motion to set aside the sale when their attorney states that had they had a chance to bid, they would have bid $117,500.00. That statement does not present the court with evidence of the amount owed to Beneficial."

As the trial court points out, Beneficial chose not to offer any evidence as to the amount of its lien during the foreclosure proceedings. Therefore, the only evidence of the amount owed on the property was the money judgment entered in favor of Alliance. The sheriff's return from the foreclosure sale shows that the money paid by the Coxes was nearly twice the amount of the judgment, taxes, interest, and costs on the property. Moreover, Kansas case law states that absent any irregularity in proceedings, a sale cannot be set aside if it was for the full amount of judgment, taxes, interest, and costs.

In *Federal Land Bank v. Butz*, 156 Kan. 662, 135 P.2d 883 (1943), a motion had been filed to set aside the sheriff's sale. In upholding the trial court's confirmation of the mortgage foreclosure sale, our Supreme Court noted that the first mortgagee, who held the only foreclosed mortgage on the property, had bid the full amount of its judgment, interest, costs, and taxes. Noting there was no contention that the sale was invalid or subject to attack, our Supreme Court held that the sale was for an adequate price and affirmed the confirmation. 156 Kan. at 665.

In *Liberty Savings & Loan Ass'n v. Hanson*, 145 Kan. 174, 64 P.2d 609 (1937), our Supreme Court stated that a judgment creditor has an absolute right to have the sale confirmed where there was no irregularity in the proceedings and no substantial disparity between the value of the property and the selling price at the foreclosure sale. 145 Kan. at 175-76. Our Supreme Court further stated that to deny the right to have the sale confirmed "violates the constitutional mandates, state and federal, that even-handed justice shall be accorded to every litigant without denial or delay. (Kansas Bill of Rights, § 18; U.S. Const., Fourteenth Amendment.)" 145 Kan. at 176.

In both *Butz* and *Hanson*, a judgment creditor had sought to have the sale confirmed. Although the Coxes were not a judgment creditor, the general rule is that a purchaser of property at a mortgage foreclosure sale "has the option of standing in the same position and having the same right as any mortgagee or lienholder whose interest is purchased. [Citations omitted.]" *McGraw v. Premium Finance Co. of Missouri*, 7 Kan. App. 2d 32, 37, 637 P.2d 472 (1981). Because the sale to the Coxes was for an adequate purchase price, the sale should have been confirmed if it was supported by the law and was in conformity with equity. See *Hanson*, 145 Kan. at 175-76.

## A. LAW
### Notice Under K.S.A. 60-2410

Beneficial argues that because Alliance failed to furnish it with notice of the sheriff's sale, it was denied due process. Nevertheless, in initially rejecting Beneficial's due process argument, the trial court stated:

> "Beneficial argues that due process requires notice of the sale. However, the statute [K.S.A. 60-2410] does not require notice to the junior lien holder, and this lien holder was actually a party to the lawsuit in which the lien had been adjudicated. Due process requires that a defendant be given notice of the suit, delivered summons, and given the right to defend. In this case, Beneficial was given notice, answered and adjudicated their lien. The interest of Beneficial could have been secured easily by a money judgment which was never pursued."

Although the trial court stated that Beneficial "adjudicated" its lien, this was incorrect. Beneficial filed no cross-petition to foreclose its

mortgage against the defendant owner. Moreover, Beneficial neither sought any relief on its note nor set out the amount that was due under its note. This is an important point that we will focus on later in this opinion.

In addressing Beneficial's due process argument, we note that "[t]he essential elements of due process in an action affecting a person's life, liberty, or property are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *State v. Durst*, 235 Kan. 62, 66, 678 P.2d 1126 (1984)." *Stockman v. Unified Gov't of Wyandotte County/Kansas City, Kansas*, 27 Kan. App. 2d 453, 461, 6 P.3d 900 (2000). " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.]' " *Board of Reno County Comm'rs v. Akins*, 271 Kan. 192, 196, 21 P.3d 535 (2001) (quoting *Mullane v. Central Hanover Bank Tr. Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 [1950]).

Contrary to its December 2004 memorandum opinion, the trial court determined in its January 2004 memorandum opinion that Beneficial's due process rights had been violated because it was not notified of the sale. Nevertheless, the Coxes maintain that fundamental due process had been fulfilled in this case because Beneficial had been made a party to the lawsuit.

Beneficial concedes in its brief that there are no Kansas cases requiring actual notice to a junior mortgagee of a sheriff's sale of real property in a mortgage foreclosure action. Nevertheless, in defending the trial court's position that due process was denied in this case, Beneficial cites to *Akins*, 271 Kan. 192, and *McGraw*, 7 Kan. App. 2d 32. Neither of these cases provide authority for the trial court's position, however, because the appellants in those cases did not receive notice of the commencement of the foreclosure proceedings.

In *Akins*, notice of the commencement of tax foreclosure proceedings on a certain piece of real estate, as well as notice of the sheriff's sale, was accomplished only through service by publica-

tion. The landowners objected to the confirmation of the sale on the grounds that their due process rights had been violated because reasonable efforts had not been made to locate and notify them of the tax foreclosure. The trial court set aside the sale, and our Supreme Court affirmed that decision. 271 Kan. at 194-200.

In *McGraw*, the first mortgagee failed to make a junior lienor a party defendant in the foreclosure action. The junior lienor did not become aware of such action until a few days after it had been completed. The trial court ordered a second sale of the property because the junior lienor had not been made a party to the action. On appeal, this court determined that when a junior lienor has not been made a party to a foreclosure suit by the senior lienor, the junior lienor's rights should be protected by a second sale or by allowing time to redeem. 7 Kan. App. 2d at 33-39.

Unlike the facts of *Akins* and *McGraw*, it is undisputed that Beneficial received notice of the foreclosure action. Beneficial was properly served with a summons in Alliance's foreclosure action. We note that Beneficial filed an answer claiming a lien on the property. Thus, the evidence establishes that Beneficial was given the opportunity to assert its rights in the property before judgment was entered in the foreclosure action. We find no due process violation in this case.

Further, K.S.A. 60-2410(a) requires notice only by publication before real property under execution is sold. There is no requirement, however, that creditors be personally served with notice of the sale. Beneficial maintains that under K.S.A. 2003 Supp. 60-205 it was entitled to written notice of the sheriff's sale. Nevertheless, K.S.A. 2003 Supp. 60-205 states that it "shall be [an] alternative to, and not in restriction of different methods specifically provided by law." Clearly, the method for furnishing notice of a sheriff's sale under K.S.A. 60-2410(a) is a different method specifically provided by law. As a result, until K.S.A. 60-2410(a) is repealed or judicially declared infirm, the procedure under K.S.A. 60-2410(a) for giving notice of a sheriff's sale controls. Here, the notice by publication requirement found in K.S.A. 60-2410(a) was satisfied. Once Beneficial was served with summons of Alliance's foreclosure action

and filed an answer, it should have been diligent in watching the publication notices and determining the date of the sheriff's sale.

## B. EQUITY
### Extension of Statutory Redemption Period

Beneficial and Alliance, however, maintain that the trial court properly extended the period of redemption under its equitable powers. Before we can consider whether the trial court properly extended the period of redemption, we must determine whether Beneficial, as a lien creditor, was entitled to redeem the property.

K.S.A. 60-2414(c) states: "Any creditor whose claim is or becomes a lien prior to the expiration of the time allowed by law for the redemption of creditors may redeem." Although the trial court determined that Beneficial's lien had been adjudicated, no support in the record exists for this finding. Moreover, as stated previously, the trial court specifically determined that Beneficial had failed to reduce its lien to a judgment. And as a result, the trial court implicitly determined that Beneficial's lien was not protected. The next two cited cases bear out the trial court's determination.

In *Federal Land Bank v. Shoemaker*, 155 Kan. 501, 126 P.2d 205 (1942), and *Pine v. Pittman*, 211 Kan. 380, 506 P.2d 1184 (1973), the junior mortgagee was made a party to a foreclosure action and filed an answer but failed to seek foreclosure on its lien. In *Shoemaker*, the junior mortgagee admitted in its answer the priority and existence of the first mortgage lien and also filed a cross-petition in which it set out its note and second mortgage. In its cross-petition, the junior mortgagee asked for a personal judgment against the original mortgagors, for an adjudication and decree of its lien on the property subject only to the first mortgagee's lien, and for redemption rights as a junior lienholder in the event of a foreclosure sale. The junior mortgagee, however, did not seek foreclosure of its mortgage. In that case, our Supreme Court held that a junior mortgagee who failed to foreclose its mortgage waived its lien and any right of redemption. 155 Kan. at 502-04. Similarly, in *Pittman*, our Supreme Court held that a junior equitable mortgagee who failed to assert his right to foreclose or forfeit the pur-

chasers' rights waived his lien and had no right to redemption. 211 Kan. at 385-86.

Like the junior mortgagee in *Shoemaker*, Beneficial sought to retain its lien and be in the position of a junior judgment creditor without foreclosing its mortgage. The holdings of *Shoemaker* and *Pittman*, however, do not allow this to occur. See also *Federal Farm Mortgage Corp. v. Crane*, 153 Kan. 114, Syl. ¶ 1, 109 P.2d 82 (1941) (junior mortgagee who entered general appearance in foreclosure action but did not file answer and did not ask for affirmative relief waived its lien and had no right of redemption under statute).

Even if the judgment granting Beneficial the right to redeem was not erroneous and invalid, the Coxes argue that Beneficial failed to exercise its right of redemption within the time furnished under K.S.A. 60-2414(m).

Based on the trial court's journal entry of foreclosure, the trial court granted a 3-month statutory redemption period under K.S.A. 60-2414(m). Under this statute, the trial court is required to set a 3-month period of redemption "if a default occurs in the conditions of the mortgage or instrument of the most senior lien foreclosed before ⅓ of the original indebtedness secured by the mortgage or lien has been paid." Here, the trial court stated in its journal entry that "less than one-third of the mortgage indebtedness [had] been paid."

Because the sheriff's sale occurred on July 31, 2003, the statutory redemption period would have expired on October 31, 2003. Nevertheless, the trial court allowed Beneficial to redeem the property within 10 days from the time it received the trial court's January 26, 2004 opinion. In actuality, Beneficial had paid the redemption funds to the clerk of the trial court on January 22, 2004. The trial court later confirmed the redemption. In effect, the trial court allowed Beneficial to redeem the property nearly 3 months after the expiration of the statutory redemption period.

Under K.S.A. 60-2414(m), the trial court is given the discretion to extend the statutory redemption period under several precise exceptions. Here, the trial court allowed Beneficial to redeem outside of the statutory redemption period "[b]ecause Beneficial was not notified of the sale and given the right to bid which the court

believes violated their due process rights and because 'equity abhors a forfeiture.' " Nevertheless, the trial court's justification for extending Beneficial's redemption period does not fit within any of the exceptions described under K.S.A. 60-2414(m) for extending the statutory redemption period.

Furthermore, in *Meyer v. Hurst*, 109 Kan. 730, 732, 201 Pac. 859 (1921), our Supreme Court noted that the right to redeem must be exercised within the statutory time period, unless there are clear grounds for equitable interference.

Beneficial and Alliance cite *First Federal Savings & Loan Ass'n v. McKain*, 5 Kan. App. 2d 387, 617 P.2d 583 (1980), and *Loomis v. Supply Co.*, 99 Kan. 279, 161 Pac. 627 (1916), in support of their argument that a trial court may extend the right to redeem based on equitable grounds. Nevertheless, these cases are distinguishable from *Hurst* and this case. In *Hurst*, like the present case, the redemptioner paid nothing before the statutory time expired. The *Hurst* court held that it could not extend the period under those circumstances. 109 Kan. at 731-33. In both *Loomis* and *McKain*, an effort to redeem was made before the period expired. This case does not fit within that factual distinction. As a result, Alliance's failure to give personal notice to Beneficial of the sheriff's sale does not provide equitable grounds to extend the period of redemption. If Beneficial had a right to redeem, it needed to exercise that right within the redemption period.

Nevertheless, in arguing that the trial court properly extended the redemption period, Beneficial indicates that it was prejudiced by the Coxes' continuance of the hearing past the 3-month redemption period. Beneficial cites to *Piatt v. Flaherty*, 96 Kan. 42, 44, 149 Pac. 734 (1915), where this court stated:

"It is the duty of the courts to see that parties are not deprived of the right of redemption given by statute on account of delays which are the result of proceedings in the court to determine questions affecting the right of redemption. It would seem that the time might be extended by agreement of parties (27 Cyc. 1815), and perhaps a party by his conduct might estop himself from objecting to a reasonable extension of time in which to redeem."

In rejecting Beneficial's argument on this issue, the trial court stated:

"Beneficial argues that the continuance of the hearing on their motion to set aside the sale or allow bids prejudiced them. They state that the motion hearing was continued 'in an attempt to force Beneficial Mortgage Co. of Kansas, Inc., to make an election of remedies. It could either go ahead and redeem the property for the bid of the Coxes at the sheriff's sale and run the risk of the owners of the right of redemption redeeming behind (them) and wiping them out, or going ahead with the hearing on the motion of Beneficial . . . ' This argument is strained at best. The redemption statute allows for exclusive redemption by the owner for only two months of the three month redemption period. And, in any event, this court would relate any order to the date of initial filing."

We agree with the trial court's reasoning. Furthermore, we believe that if Beneficial had wanted to exercise its redemption rights within the statutory time period, it should have objected to the Coxes' continuance of the hearing. The Coxes point out that Beneficial elected not to set its motion for hearing on any of the 5 court days set aside by the trial judge between July 31 and October 31, 2003. Although the 3-month redemption period was clearly set forth in the October 2001 journal entry foreclosing Alliance's mortgage, Beneficial chose not to take any action to redeem the property or to have the matter settled within this time period.

As Alliance correctly points out in its brief, the trial court implicitly determined that Beneficial could have paid the redemption amount before the statutory period had expired. In finding that Beneficial had failed to ask to redeem the real estate in its July 31, 2003, motion, the trial court stated: "Beneficial did not seek redemption in their motion of July 31, 2003. In fact, Beneficial has not to this day redeemed the property by paying in to the clerk the purchase price and expenses." In finding that the redemption should be set aside in *Meyer v. Hurst,* 109 Kan. at 733, our Supreme Court stated:

"The old, old maxim that the law favors the vigilant and not the somnolent still holds good. A homespun version is the other saying that the Lord helps him who helps himself. It all means that he who is vigilant in business is more likely to prosper than he who gets up too late in the morning. One who has a mortgage to look after cannot with impunity depend on hearsay or legal guesses to find out when to redeem from a foreclosure sale. Reasonable care dictates that he act with that liveliness which recognizes that the purchaser who has invested his money has rights to be respected; for here or elsewhere bona fide investors are ordinarily entitled to the benefit of their bargains."

Beneficial failed to make a good faith effort to redeem before the redemption period had expired.

Because we have previously determined that Beneficial was notified of the foreclosure action and because Alliance properly used publication notice to notify the parties of the sheriff's sale, we find that no equitable reasons existed to allow Beneficial to redeem the property out of time. As a result, the trial court abused its discretion in extending the period of time for Beneficial to redeem.

In summary, Beneficial argues that because it once had a lien on the property, it should be treated differently from the Coxes and the other 165 bidders who appeared at the sheriff's sale and made bids on the property. Had the trial court confirmed the sheriff's sale to the Coxes and Beneficial appealed, Beneficial's lack of notice argument would have been fatally flawed. We state this in light of the rule set out in *Shoemaker*, *Pittman*, and *Crane*. Having elected not to foreclose its lien, Beneficial lost any remedy that it had based on that lien. Beneficial waived any rights it may have had as a lien creditor on the real property. Moreover, Beneficial waived any protection it may have had under K.S.A. 60-2415(b). We would have simply cited the cases of *Shoemaker*, *Pittman*, and *Crane* and affirmed the trial court's decision in favor of the Coxes. As a result, whether Beneficial had received notice of the sheriff's sale would have been irrelevant. Is the situation changed because the Coxes happen to be the appellants? The answer is no.

Beneficial was in the same category as the Coxes or any other private citizen. We find nothing under K.S.A. 60-2410(a) giving Beneficial the right of notice superior to the right of notice enjoyed by private citizens. K.S.A. 60-2410(a) accords to Beneficial no such preference.

*Acquiescence*

Alliance further contends that the Coxes have acquiesced in the judgment by accepting the redemption funds paid by Beneficial and, therefore, should not be allowed to challenge the trial court's decision. Whether a party has acquiesced to any part of a judgment is a question of law that involves the appellate court's jurisdiction. *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128,

137, 38 P.3d 757 (2002). A party who voluntarily complies with a judgment cannot thereafter adopt an inconsistent position and appeal that judgment. To find acquiescence in a judgment, appellate courts must be shown that the appellant either assumed burdens or accepted benefits of the judgment contested in the appeal. *Vanover v. Vanover*, 26 Kan. App. 2d 186, 188, 987 P.2d 1105, *rev. denied* 268 Kan. 896 (1999).

In order for acquiescence to cut off the right to appeal, there must be voluntary compliance with the judgment. Generally, an appellant does not waive the right to appeal by measures that are taken in defense of and to protect the appellant's rights or interest. *Bank IV Wichita v. Plein*, 250 Kan. 701, 709, 830 P.2d 29 (1992).

Beneficial's right of redemption gave it an absolute right to repurchase the property from the Coxes. When Beneficial elected to redeem the real estate, the Coxes were forced to let Beneficial buy back the property from them. As a result, the Coxes did not voluntarily accept the benefits of the judgment.

Furthermore, once Beneficial paid the redemption funds and the trial court ordered disbursal, the Coxes' acceptance of these funds came within the protective measures exception discussed in *Plein*. The evidence indicates that the Coxes had taken out a loan to finance their purchase of the subject property. If they had refused to accept the redemption funds and this court affirmed the trial court's decision, the Coxes would have suffered a hardship by having to pay unnecessary interest on their loan. We find that the Coxes' acceptance of the redemption funds did not amount to an acquiescence in the judgment and, therefore, did not cut off their right to appeal the trial court's decision.

Reversed and remanded with directions.

JOHNSON, J., dissenting: Disagreeing with the majority's statutory interpretation and believing that K.S.A. 2003 Supp. 60-205 is applicable, I respectfully dissent.

First, the majority suggests that an adequate sale price mandates confirmation of a mortgage foreclosure sheriff's sale. K.S.A. 60-2415(a) does not say that. The required confirmation finding is that the *proceedings* were regular and conformed with law and equity.

The sale price is only part of the equation; a high bid at the sheriff's sale will not cure irregularities in the court proceedings leading up to the sale. Indeed, the majority's citation to *Board of Reno County Comm'rs v. Akins*, 271 Kan. 192, 196, 21 P.3d 535 (2001), and *McGraw v. Premium Finance Co. of Missouri*, 7 Kan. App. 2d 32, 37, 637 P.2d 472 (1981), *rev. denied* 231 Kan. 801 (1982), corroborates the proposition that more than an adequate sale price is required for confirmation, notwithstanding the distinguishable facts of those cases.

Next, the majority finds that the service of the initial petition and summons was all that was necessary to hold Beneficial bound by all subsequent actions in the case. If that were so, one would expect plaintiffs, after effecting service on defendants, to simply move for summary judgment without notifying the defendants or doing so by publication. Obviously, that is not permitted. K.S.A. 2003 Supp. 60-205(a) requires that "written notices," as well as other pleadings, are to be "served upon each of the parties." Publication notice is not a permissible method prescribed in K.S.A. 2003 Supp. 60-205(b).

The majority mentions Beneficial's concession that Kansas lacks precedent requiring a foreclosing mortgagee to provide a junior lienholder with actual notice of the sheriff's sale. This misses the point. Beneficial entered an appearance in the foreclosure action and filed an answer. It was then entitled to receive notice of impending action as a participating litigant, not because of its status as a junior lienholder. The majority points out that the Coxes, as purchasers, had the option of standing in the shoes of the foreclosing mortgagee. As such, they would be subject to the foreclosing mortgagee's failure to provide notices, as required by law.

The majority relies heavily upon K.S.A. 60-2410(a) which provides, in pertinent part: "Lands and tenements taken on execution shall not be sold until the officer gives *public* notice of the time and place of sale." (Emphasis added.) The obvious purpose of this provision is to get the word out that the real estate is being sold in order to facilitate a meaningful sale. The provision is not a substitute for compliance with the K.S.A. 2003 Supp. 60-205 requirement to notify other *parties* of actions being taken in the case.

Likewise, the majority reads into K.S.A. 60-2414(c) a requirement that a lienholder must have foreclosed its lien in order to redeem. The provision is entitled *"Creditors who may redeem"* and reads: "Any creditor whose claim is or becomes a lien prior to the expiration of the time allowed by law for the redemption by creditors may redeem." K.S.A. 60-2414(c). Beneficial was a creditor, and its claim had become a lien prior to the expiration of the redemption period. A plain reading of the statute gives Beneficial standing to redeem.

Finally, the majority denies the district court the opportunity to fashion an equitable remedy by extending the period of redemption. The denial runs counter to the concept of equity. After the district court's ruling, Beneficial held real property which it could sell to recoup at least a portion of the money it was owed. The Coxes had all their purchase price money back, plus an additional $3,685.50 for expenses they incurred. The only detriment suffered by the Coxes was a missed opportunity to get a tremendous bargain. The court's remedy was an equitable balancing of the rights of all concerned.